IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASEY NOLT                              :        CIVIL ACTION
                                        :
         v.                             :
                                        :        No. 06-1292
BOROUGH OF WEST CHESTER, et al.         :

**MEMORANDUM**

Ludwig, J                                                    March 24, 2008

In this civil rights action, 42 U.S.C. § 1983, defendants[1] move for summary judgment,

Fed. R. Civ. P. 56.[2]  The complaint asserts defendants used excessive force in handcuffing

plaintiff Casey Nolt to remove her from her smoke-filled apartment.  Defendants are alleged

to have allowed her to fall head-first down a flight of stairs and, as a consequence, she

sustained serious facial injuries.  The complaint sets forth claims for false arrest; false

imprisonment; excessive force; state-created danger; and municipal violations.  Upon careful

---

[1] Defendants are Corporal Pam Baumann, Patrolman David Hammond, the Borough of West Chester and the West Chester Police Department.  Judgment will be entered against plaintiff on all claims asserted against the police department, because, "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely and administrative arm of the local municipality and not a separate judicial entity." Padilla v. Township of Cherry Hill, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (citations omitted).

[2] "Summary judgment should be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c).  In making this determination, we 'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.' " Norfolk Sothern Ry. v. Basell USA, Inc., 512 F.3d 86, 91 (3d Cir. 2008), quoting Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 276 (3d Cir. 2001).

consideration, summary judgment will be granted for defendants.

The evidentiary matters under Rule 56,[3] viewed most favorably to plaintiff, are as follows:

On Saturday, November 20, 2004 at approximately 1 a.m., defendant Baumann was approached by a man who reported that an apartment in his building was on fire. Baumann N.T. 11, Report. Baumann, Hammond and Patrolman Albert McCarthy[4] arrived at the apartment, saw and smelled smoke, and heard a smoke detector and a barking dog. Baumann N.T. 12-15; Hammond N.T. 33-34; Report. Baumann sought to wake plaintiff, who was unconscious on a couch. Baumann N.T. 16, 18-19. Initially unsuccessful, and cognizant of the danger of a fire, Baumann continued to try to awaken plaintiff. When plaintiff was aroused, she attempted to strike Baumann. Baumann N.T. 23-24, 38-39, 41, 42; Hammond N.T. 37, 47-48; Report. She refused to leave the apartment. Baumann and Hammond handcuffed her behind her back.[5] Baumann N.T. 28; Hammond N.T. 47-48; Report.

---

[3] The record on summary judgment consists of deposition transcripts of plaintiff and the officers involved in the incident and the Chief of Police of the Borough of West Chester, a copy of the Incident Investigation Report ("Report"), and excerpts from the West Chester Police Procedure Manual.

[4] McCarthy is not a defendant. McCarthy, an experienced and nationally certified firefighter and captain of the local West Chester fire company, was not involved with efforts to lead plaintiff from her apartment. He concentrated on locating the source of the smoke and clearing it from the apartment. McCarthy N.T. 40-41, 43-45, 77-78

[5] The Police Procedures Manual specifies that "The method of handcuffing person(s) in custody will be hands cuffed behind the back, palms outward, with the handcuffs double locked." This method is applicable to "all persons arrested who are to be transported in a police vehicle, charged with a serious crime, is violent, is a danger to himself or others . . ." Manual, ¶¶ II. A. & B. Officers Baumann and Hammond testified that they were aware of these procedures, and

Hammond's testimony is that he used the force necessary to pull plaintiff's hands behind her back because she refused to put them there voluntarily. Hammond N.T. 48; Report. Both officers explained that they believed handcuffing was necessary so as to remove plaintiff from the dangerous situation.[6] Plaintiff was uncooperative, and had already tried to strike the officers and might do so again. Baumann N.T. 28, 41-42; Hammond N.T. 56-58, 77.

Once handcuffed, plaintiff became more compliant and the officers proceeded to lead her out of the apartment. With Hammond walking behind plaintiff[7] and holding the handcuffs, plaintiff was able to leave her apartment and walk down one flight of stairs without difficulty. Baumann N.T. 44, 55, 65-66; Hammond N.T. 54-55, 74-76; Report. On the second landing, however, plaintiff pulled away from Hammond, who lost his hold on the handcuffs. Plaintiff fell down the stairs, striking her head on the lower landing. Baumann N.T. 57-58; Hammond N.T. 64; Report. Shortly thereafter, the fire department and paramedics arrived and began to treat plaintiff's injuries. She was transferred to Crozer-

---

acted in accordance with them. Baumann N.T. 31; Hammond N.T. 49-50. Additionally, Officer Hammond testified that he received training and instruction from the police academy regarding how and when to handcuff an individual. Hammond N.T. 76-77,

[6] Both officers also testified that they had not been instructed that it is unlawful to handcuff an individual in order to remove them from a dangerous situation. Baumann N.T. 67-68; Hammond N.T. 77-79. See Gruver v. Borough of Carlisle, Civ A. No. 05-1206, at 10 (M.D. Pa., filed May 19, 2006) (handcuffing and tasering individual suffering hypoglycemic attack did not constitute excessive force when done after individual appeared disoriented, struggled against officers, and appeared to be walking into oncoming traffic).

[7] Hammond testified that he was trained to walk behind individuals in handcuffs, particularly where the individual posed a threat to the officer. He believed that plaintiff might attempt to strike him again.. Hammond N.T. 60-61, 65-66.

Chester Hospital where she received further treatment.  Report.

Plaintiff testified she does not remember the incident - her last memory before waking in the hospital was putting a pot of noodles on the stove.  Nolt N.T. 19-21.  She does not know whether the apartment was filled with smoke, does not recall being handcuffed or how she came to fall down the steps.  Id. at 30, 44-45, 104-05.

The issue at this stage is whether defendants' alleged conduct could amount to more than negligence.  "A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  Groman v. Township of Malapan, 47 F.3d 628, 632 (3d Cir. 1995) (citations omitted).  "The Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property.  In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required."  Daniels v. Williams, 474 U.S. 327, 333 (1986)(injury resulting from pillow case negligently left on prison stairs by correctional officer was not actionable under § 1983); Davidson v. Cannon, 474 U.S. 344, 347-48 (1986) (injury resulting from attack by inmate not actionable because failure to protect was not "the sort of abusive conduct that the Due Process Clause was designed to prevent.").

Here, the Rule 56 record evinces that the officers followed standard police procedures and tried to protect, not injure, plaintiff.  She was not pushed down the stairs.  The

4

uncontroverted testimony of the officers is that she fell when she pulled away from Officer Hammond. Plaintiff says the circumstances were not as dangerous as those depicted by the officers, who improperly tried to lead a disoriented individual down a series of stairs, and they should have walked in front of her so as to avoid or break a possible fall.[8]   She maintains their conduct rises to a constitutional violation. She admits not recalling the events leading up to her fall or how she fell. She offers no matters to show more than mere negligence, not the kind of abusive conduct contemplated by § 1983. As a result, plaintiff's constitutional claims against Officers Baumann and Hammond must be dismissed, and judgment must be granted in their favor.

Plaintiff's individual claims must also be rejected for lack of evidence:

Count I and II - false arrest and imprisonment.  It does not appear plaintiff was arrested. She was taken into custody for her protection and to protect the officers during their efforts to remove her from the apartment. She was handcuffed and led out of the apartment using the procedures set forth in the municipality's Procedure Manual. See also Simmons v. Philadelphia, 947 F.2d 1042, 1049 (3d Cir. 1991) ("pursuant to a departmental directive, the City police ordinarily do not file charges against intoxicated persons, but merely hold them in protective custody until they are sober or can be released to a responsible

---

[8] According to plaintiff, the officers had an absolute duty to protect her. Memorandum at 8. This is not the correct legal standard. See DeShaney v. Winnebago Cty. Dep't. Of Soc. Serv., 489 U.S. 189, 200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")

party."). Given the circumstances, even if there had been an arrest, its purpose was to protect plaintiff and the officers and, as such, would have been lawful. See, e.g., Gruvey v. Carlisle, Civ. A. No. 05-1206 (M.D. Pa., filed May 19, 2006). Because plaintiff's false arrest claim does not succeed, it follows as a matter of law that her false imprisonment claim is also unsupportable. Lynn v. Christner, 184 Fed. Appx. 180, 184 (3d Cir. 2006), citing Groman, 47 F.3d at 636.

Count III - excessive force. Officer Hammond admits to using force to handcuff plaintiff, which plaintiff contends, even the handcuffing by itself, was excessive. However, force is not excessive where the officers' actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Determinative factors include the need and the amount of force used, the injury inflicted, the threat perceived by the officers, and whether the force was applied in good faith. Id. at 396. Here, the record shows the apartment was smoke-filled and there was a need to leave for the safety of both plaintiff and the officers. Plaintiff was combative and resistant to leaving. Officer Hammond's unrefuted testimony is that he used only whatever force was necessary. Plaintiff does not assert having been injured by the handcuffing, only by the fall. Nolt N.T. 30, 44-45, 104-05. See Gilles v. Davis, 427 F.3d 197, 208 (3d Cir. 2005) (evidence of excessive force related to handcuffing was insufficient where plaintiff did not seek or receive medical treatment for injuries related the to the handcuffing).

Count IV - state-created danger.  Plaintiff offers no evidence of two of the essential elements of a state-created danger - that her fall was a foreseeable and direct result of the officers' conduct, and that the officers acted with a "degree of culpability that shocks the conscience."[9] According to the evidence, plaintiff's fall occurred when she pulled away from Hammond.  She had already safely walked down one flight of stairs.

Moreover, there is nothing to prove that the conduct of the officers "shocks the conscience."  The conduct of the officers was, at most, negligent.  As a matter of law, "negligent behavior can never rise to the level of conscience shocking."  Kaucher v. County of Bucks, 455 F.3d 418, 426 (3d Cir. 2006).  "The required culpability must be somewhere within the bounds of gross negligence, at a minimum, and gross recklessness, at a maximum."  Ye v. United States, 484 F.3d 634, 639 (3d Cir. 2007).  Plaintiff's state-created danger claim is deficient.

---

[9] Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006).  The other elements are that the relationship between plaintiff and defendant was such that plaintiff was a foreseeable victim of the defendant's acts, and that a state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all.  Here, it is unnecessary to consider these factors.

Count V - municipal violations.  Because there is no constitutional violation, a necessary element of Monell,[10] defendants are entitled to judgment on this claim.


BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

_____

[10] The elements of a Monell claim are (1) the deprivation of a Constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation.  Monell v. Department of Soc. Serv., 436 U.S. 658, 691 (1978).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASEY NOLT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 06-1292 |
| BOROUGH OF WEST CHESTER, et al. | : | |

**ORDER**

AND NOW, this    24th    day of March, 2008, "Defendants' Motion for Summary

Judgment" (docket no. 23) is granted, and judgment is entered in favor of defendants and

against plaintiff.  A memorandum accompanies this order.

BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

9